UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | CASE NO. CV F 11-1896 LJO SKO |
| Plaintiff, | **SUMMARY JUDGMENT DECISION AND JUDGMENT** |
| | (Doc. 36.) |
| vs. | |
| DANIEL DE LA CERDA, et al., | |
| Defendants. | |
| _____/ | |

**PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action.

**INTRODUCTION**

Pursuant to F.R.Civ.P. 56, plaintiff J & J Sports Productions, Inc. ("J & J") seeks to impose a monetary judgment against defendant Daniel De La Cerda ("Mr. De La Cerda") for Mr. De La Cerda's unlawful interception of a closed-circuit boxing program. This Court

1

considered J & J's unopposed summary judgment motion on the record[1] and VACATES the October 28, 2013 hearing, pursuant to Local Rule 230(c), (g). For the reasons discussed below, this Court GRANTS J & J a $7,200 judgment against Mr. Cerda.

## BACKGROUND

### Program Interception

J & J is a closed-circuit distributor of sports and entertainment programming and obtained for the United States the exclusive commercial exhibition licensing rights to "*Tactical Warfare: Manny Pacquiao v. Antonio Margarito, WBC Light Middleweight Championship Fight Program*" ("program"), which was broadcast on November 13, 2010. J & J marketed sub-licensing (commercial exhibition) rights to commercial establishment customers in the United States to permit them to show the program. To broadcast the program, J & J required commercial establishments to pay a sublicense fee of $2,200 for seating capacity up to 100 persons. J & J did not sublicense the program to Mr. De La Cerda, codefendants Erica De La Cerda and Daniel's Mexican Grill, LLC.[2]

J & J alleges that Mr. De La Cerda unlawfully intercepted and exhibited the program at his Daniel's Mexican Grill ("grill") in Reedley, California without payment of the $2,200 commercial sub-licensing fee.

J & J relies on the affidavit of private investigator Everett Rabbon ("Mr. Rabbon"), who claims that beginning at 8:15 p.m. during the program, he observed that two 50-inch televisions showed the program and that no cover charge was assessed. Mr. Rabbon rated the grill as "good." His three head counts during the program revealed four or five people in the 40-person capacity grill.

///

---

[1] In the absence of Mr. De La Cerda's timely opposition, this Court carefully reviewed and considered the entire record to determine whether J & J's summary judgment motion is well supported. Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the effect that this Court did not consider the evidence, argument, document, objection or paper. This Court thoroughly reviewed, considered and applied the evidence it deemed admissible, material and appropriate for summary judgment.

[2] J & J seeks summary judgment against Mr. De La Cerda only.

2

**J & J's Claims**

J & J alleges claims for violation of the Communications Act of 1934, 47 U.S.C. §§ 605, et seq., and conversion. By summary judgment, seeks statutory and enhanced damages under 47 U.S.C. § 605 ("section 605") and $2,200 damages for conversion of the program.

**DISCUSSION**

**Summary Judgment Standards**

J & J contends that there is no genuine issue of material fact as to Mr. De La Cerda's unlawful interception and broadcast of the program.

F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.*, 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(a), (c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

3

functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)

"[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.")

F.R.Civ.P. 56(e)(3) provides that when a party "fails to properly address another party's assertion of fact," a court may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988). When a summary judgment motion is unopposed, a court must "determine whether summary judgment is appropriate – that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990). A court "cannot base the entry of summary judgment on the mere fact that the motion

4

is unopposed, but, rather must consider the merits of the motion." *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004). A court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101.

As discussed below, J & J has demonstrated that it is entitled to summary judgment against Mr. De La Cerda on J & J's section 605 and conversion claims.

### **Signal Piracy**

### *Liability*

Section 605 addresses unauthorized publication or use of wire or radio communications and provides in pertinent part:

> (a) . . . no person receiving, assisting in receiving . . . any interstate . . . communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.
>
> . . .
>
> (e)(3)(A) Any person aggrieved by an violation of subsection (a) of this section . . . may bring a civil action in a United States district court or in any other court of competent jurisdiction.

Section 605(d)(6) defines "any person aggrieved" to include "any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or

5

retail distributors of satellite cable programming."

In addition, the Cable Communications Policy Act of 1992, in particular 47 U.S.C. § 553 ("section 553"), addresses unauthorized reception of cable service and provides in pertinent part:

> (a)(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
>
> . . .
>
> (c)(1) Any person aggrieved by any violation of subsection (a)(1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction.

"The Cable Communications Act imposes strict liability under 47 U.S.C. §§ 553 and 605." *Don King Productions/Kingvision v. Lovato,* 1996 WL 682006, at *3 (N.D. Cal. 1996). "Both § 553 and § 605 are strict liability statutes." *J & J Sports Productions, Inc. v. Delgado*, 2012 WL 371630, at *3 (E.D. Cal. 2012).

J & J identifies itself as a "person aggrieved" under sections 605 and 553 given its "exclusive nationwide distribution rights to the Program" for commercial establishments, like the grill.

### *Deemed Admissions*

To establish Mr. De La Cerda's liability under section 605, J & J relies on Mr. De La Cerda's failure to respond to J & J's F.R.Civ.P. 36 requests for admission to result in Mr. De La Cerda's deemed admissions. F.R.Civ.P. 36(a)(3) provides: "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."

"Failure to respond to requests for admissions results in automatic admission of the matters requested. . . . No motion to establish the admissions is needed because Federal Rule of Civil Procedure 36(a) is self executing." *Federal Trade Comm. v. Medicor LLC*, 217

6

1  F.Supp.2d 1048, 1053 (C.D. Cal. 2002).  "The failure to respond to admissions can effectively
2  deprive a party of the opportunity to contest the merits of the case."  *In re Carney*, 258 F.3d
3  415, 421 (5th Cir. 2001).

4        "Unanswered requests for admissions may be relied on as the basis for granting
5  summary judgment." *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir.2007).  Facts deemed
6  admitted because of failure to respond to requests for admission may support summary
7  judgment. *Nick-o-Val Music Co., Inc. v. P.O.S. Radio, Inc.*, 656 F.Supp. 826, 828 (M.D. Fla.
8  1987).

9        J & J notes that Mr. De La Cerda's failure to respond to J & J's requests for admission
10  results in the following deemed admissions:

11      1.    Mr. De La Cerda was an owner, manager and officer of the grill when the
12  program was broadcast;

13      2.    Mr. De La Cerda was present inside the grill when the program broadcast, and
14  bartenders and managers acted on his behalf;

15      3.    Mr. De La Cerda advertised that the program would be telecast at the grill and
16  knew that the grill's patrons watched the program;

17      4.    Mr. De La Cerda did not order the program from J & J;

18      5.    Mr. De La Cerda did not pay a licensing fee to J & J although he was aware a
19  licensing fee was required to be paid to J & J;

20      6.    Mr. De La Cerda willfully intercepted and broadcast the program at the grill;

21      7.    The program was received because a residential cable or satellite service was
22  diverted to the grill, an illegal decoder was used in the grill, a satellite access card without
23  property authorization or payment was used, and/or Mr. De La Cerda ordered the program
24  from and paid a programming provider the residential license fee for the program; and

25      8.    Mr. De La Cerda obtained the program illegally and intentionally broadcast the
26  program by deception for financial gain.

27        J & J argues that it is entitled to summary judgment on section 605 liability in that Mr.
28  De La Cerda effectively admits that he illegally intercepted and broadcast the program at the

7

grill willfully and for financial gain. J & J notes that Mr. De La Cerda could legally broadcast the program only by contracting with J & J for a sub-license. J & J points out that the program was broadcast at the grill to impose section 605 strict liability on Mr. De La Cerda.

"There are no mens rea or scienter elements for a non-willful violation of 47 U.S.C. § 605(a), or its counterpart governing unauthorized interception of cable service under 47 U.S.C. § 553(a)." *Joe Hand Promotions, Inc. v. Easterling*, 2009 WL 1767579, at *4 (N.D. Oh. 2009). "These are strict liability offenses with no good faith defense." *Easterling*, 2009 WL 1767579, at *4. "As a strict liability statute, to prove a violation, [plaintiff] need only show that the Event was shown in Defendant's establishment without its authorization." *Joe Hand Promotions, Inc. v. Moctezuma Club, Inc.,* 2012 WL 2358254, 2 (N.D. Tex. 2012).

J & J contends that it is entitled to hold Mr. De La Cerda liable individually given his ownership and control of the grill. To hold a defendant personally liable, a plaintiff must show that the defendant had a "right and ability to supervise the violations, and that [he] had a strong financial interest in such activities." *J & J Sports Productions, Inc. v. Ribeiro*, 562 F.Supp.2d 498, 501 (S.D.N.Y.2008). "Individual liability under the Cable Act requires that the individual authorize the underlying violations." *J&J Sports Productions, Inc. v. 291 Bar & Lounge, LLC*, 648 F.Supp.2d 469, 473 (E.D. N.Y. 2009). "Put differently, the complaint must establish that the individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct." *291 Bar & Lounge*, 648 F.Supp.2d at 473 (quoting *Softel, Inc., v. Dragon Medical and Scientific Communications, Inc.*, 118 F.3d 955, 971 (2d Cir.1997)).

J & J points to Mr. De La Cerda's admission in his answer that he owns and controls the grill. J & J further points to public records to reveal Mr. De La Cerda as an officer and registered agent for defendant Daniel's Mexican Grill, LLC. J & J characterizes Mr. De La Cerda to possess the right and ability to supervise violations with a strong financial interest in violations. J & J concludes there is no factual issue whether Mr. De La Cerda is subject to section 605 liability.

J & J raises valid points and establishes that it is an aggrieved person entitled to section

605 relief. Mr. De La Cerda's deemed admissions and failure to oppose summary judgment demonstrate his wrongful interception of the program and liability under section 605.

### *Damages*

J & J seeks to impose on Mr. De La Cerda statutory damages under section 605(e)(3)(C) given difficulty to prove actual damages sustained by J & J.

Section 605(e)(3)(C)(i)(II) authorizes statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. §605(e)(3)(C)(ii) authorizes "enhanced" damages up to $100,000 if the court finds the violation was willfully committed for commercial advantage or private financial gain. Alternatively, if "the court finds that the violator was not aware and had no reason to believe that his acts constituted violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." 47 U.S.C. §605(e)(C)(iii).

### Statutory Damages

"In general, statutory damages are appropriate where, as here, the measure of actual damages is difficult to prove." *Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F.Supp. 730, 732 (D.C. N.Y. 1981).

In his affidavit, J & J President Joseph M. Gagliardi ("Mr. Gagliardi") states that "signal piracy" has caused J & J Sports' "loss of several millions of dollars of sales revenue" and "has a detrimental effect upon lawful residential and commercial customers of cable and satellite broadcasting whose costs of service are increased significantly by these illegal activities." Mr. Gagliardi further points to signal pirates' increased financial gains and millions of dollars lost to J & J and its customers "resulting, in significant part, from the perceived lack of consequences" to signal pirates.

J & J notes that section 605 awards serve the primary goal of "specific and general" deterrence. The "amount of damages awarded should be in an amount that is adequate to deter these Defendants and others from committing similar acts in the future." *Joe Hand Promotions, Inc. v. Gamino*, 2011 WL 66144, at *4 (E.D. Cal. 2011). A "firm judicial hand is required to stop this predatory behavior, which is outright thievery, and to compensate the

aggrieved appropriately." *J & J Sports Productions, Inc. v. Brazilian Paradise, LLC*, 789 F.Supp.2d 669, 677 (D. S.C. 2011) (internal quotation omitted). The "difficulty in detecting unlawful interception, the widespread problem of piracy, the projected loss to plaintiff, and the need for an award sufficient to deter future piracy by defendants and others, weigh in favor of granting maximum statutory damages." *J & J Sports Productions, Inc. v. Cubides*, 2008 WL 2756401, *2 (S.D. Tex. 2008).

J & J points to the absence of a Ninth Circuit formula to calculate section 605 damages to invoke this Court's "considerable discretion."  A fellow district court notes that section 605 damages are based on "the number of patrons in the establishment at the time of the violation" or "a flat sum for damages." *Entertainment by J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F.Supp.2d 769, 776 (S.D. Tex. 2002). J & J urges a "flat sum" damages calculation given the few patrons in the 100-capacity grill during the program and that "a damage award based on this limited number may do little to prevent such unlawful conduct in the future." See *Kingvision Pay-Per-View, Ltd. v. Gutierrez,* 544 F.Supp.2d 1179, 1184 (D. Colo. 2008). "Merely requiring [defendant] to pay the price it would have been charged to obtain legal authorization to display the Event does nothing to accomplish this objective of the statute. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid." *Entertainment by J & J, Inc.*, 219 F.Supp.2d at 776 (internal quotation omitted). "[M]inimal damage awards may result in a perceived lack of consequences for signal piracy." *J & J Sports Productions, Inc. v. Herrera*, 2011 WL 643413, at *4 (E.D. Cal. 2011).

J & J proposes no set amount of statutory damages under section 605(e)(3)(C)(i)(II). J & J relies on this Court's discretion to award statutory damages between $1,000 and $10,000. The record supports a flat sum of statutory damages given the limited four to five patrons at the grill during the program. Mr. De La Cerda's deemed admissions are that he pirated the program, and he offers nothing to mitigate his conduct. As such, statutory damages of $2,500 will fulfill section 605(e)(3)(C)(i)(II) purposes and serve to deter piracy.

Enhanced Damages

Turning section 605(e)(C)(ii) enhanced damages, J & J points to Mr. De La Cerda's

10

deemed admissions that he acted willfully for financial gain. J & J contends that Mr. De La Cerda's "inadvertent" acquisition of the program is "extremely unlikely" given J & J's efforts to avoid descrambling signals to avoid piracy. "The act of intercepting an encrypted broadcast is not done by accident, but requires an affirmative action by the defendant. Very simply, the Court finds that the defendant took willful action to unlawfully intercept and broadcast the Exhibition." *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.,* 920 F.Supp.2d 659, 668 (E.D. Va. 2013) ("Because the defendant showed the Exhibition on all of its televisions at no cost, the Court concludes that the defendant acted willfully for commercial advantage and private financial gain.").

Similar to its approach to statutory damages, J & J proposes no set amount of enhanced damages under section 605(e)(3)(C)(ii) and relies on this Court's discretion to award up to $100,000 enhanced damages. Mr. De La Cerda's deemed admissions and failure to defend J & J's claims demonstrate he acted willfully for commercial gain. Although his gain appears limited with only four to five patrons, no mitigating factors appear. As such, additional $2,500 enhanced damages are appropriate.

### **Conversion Claim**

J & J further seeks to impose on defendants a $2,200 judgment for its conversion claim.

"In California, conversion has three elements: ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). Broadcast signals and rights constitute property for a conversion claim. *DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d 1182, 1189 (E.D. Cal. 2005) ("Plaintiff possesses a right to distribute programming via satellite broadcast, thereby satisfying the first element of conversion"); *Don King Productions/Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995).

J & J contends that its exclusive program distribution rights constituted its possession of the program which was intercepted and thus converted. J & J seeks $2,200, which is commercial sub-license fee charged to an establishment with the grill's seating capacity.

The record reflects that Mr. De La Cerda converted the programming to entitle J & J to

its $2,200 fee for an establishment of the grill's capacity.

## Legal Expenses

Section 605(e)(3)(B)(iii) provides for "recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." As such, J & J requests to submit papers for an award of attorney fees and costs. J & J is entitled to seek attorney fees and costs against Mr. De La Cerda given summary judgment for J & J.

## CONCLUSION, ORDER AND JUDGMENT

J & J has established that it is entitled to summary judgment against Mr. De La Cerda on its section 605 and conversion claims. As such, this Court:

1. GRANTS J & J a $7,200 judgment against Mr. De La Cerda;

2. ENTERS this JUDGMENT in favor of plaintiff J & J Productions, Inc. and against defendant Daniel De La Cerda in that there is no just reason to delay to enter this JUDGMENT given that J & J's claims against Mr. De La Cerda and his alleged liability are clear and distinct from claims against and liability of any other defendant, including defendants Eric De La Cerda and Daniel's Mexican Grill, LLC. *See* F.R.Civ.P. 54(b). This JUDGMENT is subject to F.R.App.P.'s 4(a)'s time limitations to file an appeal of this JUDGMENT; and

3. ORDERS J & J, no later than November 18, 2013, to file and serve appropriate papers, if it seeks attorney fees and costs, and to set the appropriate hearing before U.S. Magistrate Judge Sheila K. Oberto, who will determine the matter.

IT IS SO ORDERED.

Dated:   **October 16, 2013**                    **/s/ Lawrence J. O'Neill**
                                                  UNITED STATES DISTRICT JUDGE